## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MANDELL DELVONTE CAROLINA, JR., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-14-251-RAW-KEW |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mandell Delvonte Carolina, Jr. (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied.  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); <i>see also</i>, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 7, 1965 and was 47 years old at the time of the ALJ's decision.  Claimant completed his high school education and one year of college.  Claimant has worked in the past as a truck driver and restaurant manager.  Claimant alleges an inability to work beginning December 31, 2008 due to limitations

resulting from post-traumatic stress disorder and back and feet problems.

## Procedural History

On September 11, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On October 1, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") J. Dell Gordon in Oklahoma City, Oklahoma.  On February 4, 2014, the ALJ issued an unfavorable decision on Claimant's application.  The Appeals Council denied review of the decision on April 23, 2014.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work as a restaurant manager.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's depression and PTSD as severe impairments or

include the associated limitations in his RFC findings; (2) rejecting the opinions of two agency medical experts; (3) rejecting the postural limitations assessed by the agency experts; and (4) reaching an RFC which did not include all of Claimant's work-related limitations identified by the agency medical experts or include the limitations in the hypothetical questioning of the vocational expert.

## Step Two Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, degenerative joint disease, and hypertension. (Tr. 21). The ALJ also found Claimant retained the RFC to perform a full range of light work. (Tr. 23). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform his past relevant work as a fast food restaurant manager. (Tr. 30). As a result, the ALJ found Claimant was not disabled from December 31, 2008 through December 31, 2012, the date last insured. Id.

Claimant contends the ALJ failed to include his PTSD and depression as severe impairments at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps

considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. <u>Brescia v. Astrue</u>, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" <u>Id</u>. quoting <u>Hill v. Astrue</u>, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42

U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's PTSD and depression in the evaluation of the subsequent steps as noted by Claimant in the recitation of his mental health records throughout three pages of his decision. Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

Claimant also contends that the ALJ should have included limitations in his step four analysis associated with Claimant's PTSD and depression. This Court will consider this argument in connection with the next issue concerning the weight afforded the agency experts related to these conditions.

### Consideration of Agency Expert Evidence

Claimant next asserts the ALJ failed to properly weigh and evaluate the opinions of two agency physicians. On January 16, 2013, Claimant was evaluated by Dr. Leela Reddy who diagnosed Claimant with anxiety disorders. Dr. Reddy found Claimant to be

mildly restricted in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 88-89).

Dr. Reddy also found Claimant's ability to understand and remember detailed instructions was moderately limited and had sustained concentration and persistence limitations. Claimant was also determined to be moderately limited in his ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In a narrative explanation of these limitations, Dr. Reddy stated that Claimant was able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, interact with others, and respond to changes. (Tr. 93).

Dr. Reddy also found Claimant had social interaction limitations. She determined Claimant was moderately limited in the ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from

supervisors; and ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 93).

Dr. Reddy stated Claimant had adaptation limitations. In so finding, she determined Claimant was moderately limited in the ability to respond appropriately to changes in the work setting. (Tr. 94). She found Claimant did not have the requisite RFC to perform his past relevant work. She did conclude, however, that Claimant could perform light work. (Tr. 95).

On April 22, 2013, Claimant was also evaluated for mental limitations by Dr. Jim Cox, an agency expert. Dr. Cox made similar but more extensive findings as Dr. Reddy including moderate limitations in the areas of the ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination with or in proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact

appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (Tr. 107-08).

The ALJ gave this opinions "some, but not great weight." His basis for this reduced consideration was that the findings were not entirely consistent with "serial mental status findings, treating medical records, objective medical evidence, and the record overall." The ALJ was critical that the experts did not appear to take into account Claimant's improvement when he was fully compliant with taking his medication, abstained from alcohol, and participated in a twelve step group program. (Tr. 29). He also found the record demonstrated no more than mild limitations in the areas of concentration, persistence, or pace social interaction. (Tr. 29-30).

Claimant's PTSD began when he was involved in an IED explosion while serving in the military in Iraq on February 15, 2005. On May 17, 2010, Claimant was evaluated by Dr. Gregory D. Dayton who diagnosed Claimant with chronic PTSD, mild to moderate in severity, with major depression, single episode, severe, with psychotic

features.  Dr. Dayton assessed Claimant with a GAF of 50.  (Tr. 302).

On May 20, 2011, Dr. Gilda Kessner assessed the status of Claimant's PTSD.  She found Claimant was re-experiencing the event with recurrent intrusive images or thoughts about the trauma, recurrent distressing dreams about the trauma, took efforts to avoid thoughts, feelings, and conversations associated with the trauma.  Dr. Kessner also found Claimant had difficulty falling or staying asleep, irritability or outbursts of anger, hypervigilance, and exaggerated startle response.  These conditions caused clinically significant distress or impairment in social, occupational, or other important areas of functioning.  (Tr. 293).

The ALJ found the state agency physicians failed to take into account Claimant's improvements and stability with treatment.  The ALJ does not specifically cite to the record concerning such improvements.  Moreover, the ALJ assumed the findings by the experts did not take any such treatment into consideration in reaching their conclusions - a finding which is entirely speculative and without citation to its foundation.  On remand, the ALJ shall re-evaluate the opinions of Drs. Reddy and Cox and the limitations upon Claimant's ability to engage in basic work activities in assessing Claimant's RFC.  Should the ALJ maintain

his effective rejection of these opinions, he shall cite to specific evidence in the record which contradicts their findings of functional limitations without engaging in rank speculation.

## Consideration of Postural Limitations

Claimant contends the ALJ ignored certain of Claimant's postural restrictions found by the state agency physician, Dr. Betty Santiago. Dr. Santiago opined on Claimant's physical RFC by stating he could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday. (Tr. 90-91). He could only occasionally climb stairs/ramps, ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. (Tr. 91). These findings were essentially confirmed by Dr. John Durfor. (Tr. 104-05).

The ALJ did not include any postural limitations in his RFC findings, despite giving these opinions "significant weight" as being consistent with the remainder of the medical record. (Tr. 29). An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ shall either include these limitations in his RFC assessment or explain the

basis for excluding these restrictions while adopting the remainder of the experts' opinions.

### Hypothetical Questioning of the Vocational Expert

Claimant concludes his arguments by stating the questioning of the vocational expert was flawed since it did not include all of Claimant's physical and mental limitations. Since this Court has directed a re-evaluation of the ALJ's RFC assessment, the hypothetical questioning of the vocational expert will be reformulated to mirror the RFC found by the ALJ on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE